Mario Pittohi, J.
Motion by the plaintiff for summary judgment is granted.
Plaintiff and the individual defendant are brothers; and in 1951 were respectively sales manager and a salesman for Mack Markowitz, Inc., which corporation has the Oldsmobile agency in Hempstead. Defendant Bruce Oldsmobile, Inc., was formed in consequence of a stockholders’ agreement dated January 7, 1952 between plaintiff, defendant, Mack Markowitz and his sister Helen. Bruce Oldsmobile, Inc., was franchised by Oldsmobile as its Hicksville agency. Under the contract Mack and Helen Markowitz subscribed for 188 shares of $100 par stock each, and the individual defendant subscribed for 125 shares of *321 such stock; restrictions were imposed on stock sale, and the individual defendant was given the option to purchase from Mack and Helen Markowitz 31% of their stockholdings.
Paragraphs 12,13 and 14 of the agreement of January 7,1952 provided as follows:
“ 12. Harold B. Plesch, one of the stockholders herein, represents that the 125 shares held by him are owned jointly by Ira Plesch and himself, and that while he holds legal title thereto, that Ira Plesch is an equitable owner thereof to the extent of 50%, and for that reason the said Ira Plesch is hereby made a party to this agreement, and that any and all benefits that accrue herein to Harold B. Plesch are intended for the mutual and joint benefit of Harold B. Plesch and Ira Plesch, and that any and all stock purchased hereunder by Harold B. Plesch shall be owned jointly by the said Harold B. Plesch and Ira Plesch, provided that Ira Plesch contributes his proportionate share of the cost thereof.
13. The parties further agree that this agreement shall and does hereby supersede any and all agreements heretofore made between them with reference to the stock of this corporation.
“14. No modification or waiver of any provision of this agreement shall be valid unless in writing signed by all of the parties hereto. This agreement and all of the provisions hereof shall be binding upon the heirs, executors, legal representatives, next of kin and assignees of the parties hereto.”
Plaintiff’s affidavit states that the basis of paragraph 12 was his purchase of one half of the interest taken in the name of Harold Plesch, and he submits a copy of a bank draft for $6,247.24 drawn to his order and indorsed by him and the corporation, but not by the individual defendant. The affidavit of Mack Markowitz states that the agreement was that plaintiff and defendant would be equal owners, although plaintiff’s interest would not be made public ‘ ‘ for practical business reasons.” Markowitz further states, and the individual defendant nowhere denies, that he, Markowitz, loaned the individual defendant $2,350 so that he would be able to contribute the $6,250 required for his 62% shares.
The individual defendant in March, 1958 caused the corporation to purchase the entire stockholdings of Mack and Helen Markowitz. Thereafter, plaintiff demanded the transfer of half of the 125 shares (then the only outstanding stock) to him; and on failure of defendants to do so brought this action for a judgment declaring that he is the owner of and entitled to possession of 62% shares of said $100 par common stock, direct *322 ing the individual defendant to indorse and assign the certificate for 125 shares for reissue and directing the corporate defendant to reissue a certificate for 62% shares to plaintiff. Defendants admit the demand and refusal to cause the 125 shares to be so reissued, but deny the other allegations of the complaint, and allege as defenses (1) that plaintiff made a loan to the individual defendant which was secured by naming plaintiff as equitable owner, but that it was understood that the individual defendant would always be the sole legal owner, and that plaintiff has never requested or accepted repayment of the loan, though offered, (2) that plaintiff has an adequate remedy at law, and (3) that plaintiff is guilty of laches because he failed to commence the action for six and one-half years, during which period the value of the 62% shares increased from $6,250 to more than $20,000.
Defendants submit the affidavit of the individual defendant. To this are annexed two agreements antedating the January 7, 1952 agreement, to which the Markowitzes were parties but plaintiff was not, and a letter from the Oldsmobile Division of General Motors indicating that Oldsmobile understood that the individual defendant would ultimately acquire the interests of the Markowitzes and become the sole owner. Defendant further argues that there is an ambiguity because paragraph 12 contains no provision for delivery of plaintiff’s stock, and that summary judgment cannot be had in an action of this nature.
Whether the action be regarded as one for a declaratory judgment, or for an accounting arising on the written contract of January 7, 1952, summary judgment is authorized under subdivisions 8 or 9 of rule 113 of the Rules of Civil Practice. The cases cited by the defendants holding that summary judgment may not be granted in an action to impress a trust are distinguishable. The present action is not one to impress an oral trust, the existence of which is alleged by one side and denied by the other. It is rather for the enforcement of the express written trust contained in the individual defendant’s acknowledgment ‘ ‘ that while he holds legal title thereto, that Ira Flesch (plaintiff) is an equitable owner thereof to the extent of 50%.” Medex, Inc. v. Cisatlantic Corp. (98 N. Y. S. 2d 269) cited by defendant has no application since the words just quoted could not be understood in the sense that defendant urges.
No obstacle to the granting of summary judgment arises from the failure of the written agreement to provide for delivery of plaintiff’s stock to him, for the declaration of plaintiff’s “ equitable ownership ” entitles plaintiff to demand an accounting *323 and possession of the stock at any time (Rand, v. Whipple, 71 App. Div. 62; Wakeman v. Somarindyck, 73 App. Div. 601). At least this is so unless some active trust condition was attached to the individual defendant’s holding of legal title (Matter of Reed v. Browne, 295 N. Y. 184); but none is alleged in defendant’s papers.
There is likewise no question of fact raised with respect to the intention of the parties in entering into the agreement of January 7, 1952. The agreement is clear and unambiguous; it provides for joint ownership, with the individual defendant clearly declaring himself to hold legal title as to 50% of the stock for plaintiff, the equitable owner. Defendant states in his affidavit that he was not represented by an attorney when he signed that agreement; but he alleges no representations, false or otherwise, made to him or other evidence of overreaching. He is, of course, bound by the instrument he signed in the absence of such allegations (Pimpinello v. Swift & Go., 253 N. T. 159). He offers no explanation why, if what was intended was a loan, he signed an agreement flatly stating otherwise ; whereas in view of the Oldsmobile demand for his eventual sole ownership he had every reason to cause the loan, if loan it was, to be clearly evidenced. Clearly, the more normal transaction, if what was intended was a loan, would have been for plaintiff to hold legal title, not the reverse. He offers no explanation, either, why he ‘ ‘ borrowed ’ ’ just half the amount invested from plaintiff, and then borrowed $2,350 more from Mack Markowitz instead of borrowing the entire $8,600 from either Markowitz or plaintiff. He has presented no fact other than his own bare statement and the prior agreements and letter referred to above, to raise an issue. The prior agreements and letter, even if consideration of them is not foreclosed by paragraph 13 of the agreement and the parol evidence rule, clearly have no bearing and raisé no issue with respect to the plaintiff’s ownership or as to what plaintiff and defendant intended when the agreement of January 7, 1952 was signed. Plaintiff was not a party to them.
Defendant next argues that a question of fact exists whether the January 7, 1952 agreement was amended or abandoned; but his affidavit alleges nothing other than attempts to repay the “loan” to plaintiff and plaintiff’s statement that he intended to get nothing more than repayment of his loan. The admission against plaintiff’s interest implied in that statement is not sufficient, in the face of the documents submitted by plaintiff, to create an issue on the basic contract question. On the question *324 of amendment or abandonment, it is likewise insufficient because it is without consideration and because of the provision of paragraph 14 which requires modifications to be in writing (Personal Property Law, § 33-c). Green v. Doniger (300 N. Y. 238) is not to the contrary, since the instant contract has no provision, as did the contract in the Green case for termination.
There remain the issues of laches and of adequacy of remedy at law. As to the former, until plaintiff demanded and was refused delivery of his portion of the stock, he was entitled to rely on the express declaration made in the agreement. In any event, defendant is not prejudiced by the increased value of the stock, if in fact the stock was not legally his but plaintiff’s. As to the latter, this being a close corporation which holds a valuable and difficult to obtain franchise, and its shares not having a readily ascertainable market value, the stock must be considered unique and the remedy at law is inadequate (Waddle v. Cabana, 220 N. Y. 18, 26; Baltimore Realty Corp. v. Alman, 282 App. Div. 714 [2d Dept.]).

Motion granted.

Settle order on notice.